In re John D. PERMANN, Debtor.

POCATELLO SIMPLOT CREDIT UNION, Plaintiff,

v.

John D. PERMANN, and The Otto Permann Trust, Vern Permann and Lorita Swanson, in their individual and trust capacities, Defendants.

Bankruptcy No. 93–03539.
Adv. No. 94–6219.

United States Bankruptcy Court,
D. Idaho.

Oct. 31, 1994.

Craig R. Jorgensen, Pocatello, ID, for plaintiff.

Fred J. Lewis, Racine, Olson, Nye, Cooper & Budge, Pocatello, ID, for defendants.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

Plaintiff Pocatello Simplot Credit Union (Credit Union) commenced an adversary proceeding in this Court to determine the dischargeability of a debt and seeking a money judgment against all Defendants. In response to Plaintiff's Complaint, Defendants jointly filed a pleading entitled Pre–Answer Motion to Dismiss. At the hearing held on the motion on August 2, 1994, the parties urged the Court to consider matters outside the pleadings in disposing of the motion. The Court therefore indicated it would treat Defendant's pleading as a Motion for Summary Judgment and took the matter under advisement. *See* F.R.B.P. 7012(b); F.R.C.P. 12(b). The parties declined the opportunity to make further submissions to the Court concerning the motion.

*Facts.*

From the record now before the Court it appears that in the late 1970s or early 1980s, the "Otto Permann Trust" was created (the "Trust"). Soon after Otto Permann's death, the sum of $103,968 from his probate estate was distributed to the Trust. Defendants Vernon D. Permann and Lorita Swanson, Vernon's former spouse, served as co-trust-ees. They deposited a portion of the trust funds with the Plaintiff credit union.

Both Vernon Permann and Lorita Permann Swanson obtained loans from Plaintiff beginning in 1985. Plaintiff alleges these loans were secured by pledges of money or the credit union shares of the Otto Permann trust on deposit with Plaintiff. These loans were evidently repaid as agreed.

Thereafter, on or about August 21, 1990, Defendant John D. Permann, Vernon Permann's son, executed a credit union application for a loan and a loan note in favor of the Plaintiff in the amount of $13,334.98 to refinance a loan on his vehicle. Plaintiff asserts that Defendant John Permann told its employees that his loan would be secured by Trust monies on deposit at the credit union. Plaintiff also alleges that Vernon Permann, in a phone conversation with one of Plaintiff's employees, agreed to the pledge of the Otto Permann Trust deposits as security for the loan. Because of this, Plaintiff argues, it made the loan, agreed the loan would be otherwise unsecured, and made the loan on favorable terms. Neither Vernon Permann nor Lorita Swanson signed the loan note or application as to John's loan. Thereafter, on December 17, 1993, John Permann filed a petition with this Court for relief under Chapter 7 wherein he seeks to discharge the balance due on the Plaintiff's debt.

Plaintiff claims that all Defendants are obligated to it for the balance due on the John Permann note. They also argue that the obligation of John Permann should be excepted from discharge under Sections 523(a)(2) and (a)(6) since it was incurred by the Defendants' collective fraud. Defendants Vernon Permann and Lorita Swanson respond by arguing that they had no authority to pledge trust assets as collateral for the loan to John Permann. In addition, Defendants argue it was unreasonable for Plaintiff to rely on any oral representations, if in fact they were made, because the oral pledging of funds would be unenforceable pursuant to the statute of frauds. Defendant John Permann claims that he made no false representations. He contends that in order to find the debt nondischargeable Plaintiff may not

rely on representations made by the other Defendants.

*Disposition of the Issues.*

Summary judgment is appropriate only if, viewing the evidence in light most favorably to the non-moving party, no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. F.R.B.P. 7056; F.R.C.P. 56(c); *State Farm Mutual Auto. Ins. Co. v. Davis,* 7 F.3d 180, 182 (9th Cir.1994).

*Plaintiff's Claims against Defendant John Permann.*

Defendant John Permann was the borrower in this transaction, signed the note, and the Court understands he does not argue that he is not obligated for the balance due. The action against Defendant John Permann is brought pursuant to Sections 523(a)(2)(A) and (a)(6) seeking a determination that the debt owed to Plaintiff is nondischargeable in John Permann's Chapter 7 bankruptcy case. In this regard, Plaintiff contends that John Permann obtained money by false pretenses or that his acts were such that he maliciously damaged the Plaintiff.

To except a debt from discharge pursuant to Section 523(a)(2)(A)[1] Plaintiff must prove the following elements:

"1. That debtor knowingly made a false representation of material fact;

2. With the intention or purpose of deceiving the creditor;

3. Upon which the creditor justifiably relied; and

4. As a result of which the creditor suffered damages."

*In re Beck,* 93 I.B.C.R. 156, 158. Defendant John Permann contends that the facts, even when viewed liberally in favor of Plaintiff, fail to establish two of the above elements. He argues that he personally did not make any false representations to Plaintiff's agents in connection with the loan, and that Plaintiff

could not have justifiably relied on the statements allegedly made by any of the Defendants that Trust monies could lawfully secure his loan.

Obviously, there is a question of fact as to whether John Permann made a representation about the pledging of Otto Permann Trust assets at the time he obtained the loan. Plaintiff's manager Steven Diers, by affidavit, avers that John Permann unequivocally represented to the credit union that trust assets could be pledged as security for the loan. Mr. Diers also states that the loan would not have been made or would have been made at a higher interest rate had they known there was no authority for pledging of trust assets. Nothing in the record, by way of affidavit or otherwise, conclusively shows that John Permann did not make such a representation at the time he obtained the loan. Clearly, then, this is a question of fact for trial.

There is an issue as to whether the Credit Union was justified in relying on any representations made by John, if in fact false representations were made. In discussing this element of Section 523(a)(2), the Ninth Circuit has stated that "a creditor must prove justifiable reliance upon the representation of the debtor. In determining that issue, the court must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." *In re Kirsh,* 973 F.2d 1454, 1460 (9th Cir.1992). Steven Diers has indicated that the Credit Union relied on a statement by John Permann in making the loan. Whether this reliance was justifiable is a disputed question of material fact.

Viewing the evidence in a light most favorable to Plaintiff, the non-moving party, there appear to be material questions of fact and summary judgment on the dischargeability issue pursuant to Section 523(a)(2)(A) is inappropriate.

---

1. § 523. Exceptions to discharge

    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    . . . .

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ For Plaintiff to prevail against Defendant John Permann pursuant to Section 523(a)(6), Plaintiff must prove he committed a "willful and malicious" injury. The Ninth Circuit has held "[w]hen a wrongful act ..., done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986).

Can John Permann's allegedly false statements to Plaintiff's agents also constitute a willful and malicious injury under Section 523(a)(6)? The Ninth Circuit has held that "distinctions should be made among the subsections of section 523.... [A] creditor should seek nondischargeability of a debt for fraud alone under section 523(a)(2). However, where the debtor inflicted 'willful or malicious injury,' such that punitive damages were awarded, the creditor should seek nondischargeability under 523(a)(6)." *In re Levy*, 951 F.2d 196, 199 (9th Cir.1991).

Plaintiff has neither pled nor come forth with evidence showing willful or malicious conduct on behalf of John Permann separate and apart from his alleged fraudulent representations which would rise to the level where punitive damages should be awarded. As such summary judgment in favor of John Permann would be appropriate as to the claim pursuant to Section 523(a)(6).

*Plaintiff's Action against Defendants Vern Permann and Lorita Swanson.*

Plaintiff's claims against Defendants Vern Permann and his former wife Lorita Swanson are not premised on the provisions of the Bankruptcy Code. Rather, Plaintiff urges recovery from these Defendants based on theories of common law fraud for what is described in the complaint as "false representations" or "false pretenses".[2] Plaintiff primarily focuses on the alleged false pretenses created by Defendants through the series of uneventful transactions over the years with Plaintiff when coupled with the misrepresentations and circumstances concerning the John Permann loan. Plaintiff contends that because on several occasions the Defendants borrowed money from Plaintiff, supposedly using Trust assets as security, Defendants' agreement to use Trust deposits to secure the John Permann loan, when they knew such was improper, amounts to fraud.

■ Under Idaho law, in order "[t]o establish fraud, the following nine elements must be shown:

(1) A representation of fact;

(2) Its falsity;

(3) Its materiality;

(4) The speaker's knowledge of its falsity;

(5) The speaker's intent that the representation will be acted upon in a reasonably contemplated manner;

(6) The listener's ignorance of its falsity;

(7) The listener's reliance on the truth of the representation;

(8) The listener's right to rely on the truth of the representation; and

(9) The listener's consequent and proximate injury."

*McCoy v. Lyons*, 120 Idaho 765, 777, 820 P.2d 360, 372 (1991). "The party alleging fraud has the burden of showing these nine elements." *Id.* The Supreme Court of Idaho has refused to apply a clear and convincing burden of proof standard in reviewing summary judgment in fraud and misrepresentation cases, and has applied the usual standard of review to determine whether there is a genuine issue of material fact making summary judgment inappropriate. *Large v. Cafferty Realty, Inc.*, 123 Idaho 676, 680, 851 P.2d 972, 976 (1993).

■ Plaintiff characterizes Defendants' conduct as "false pretenses." However, it appears that in the law "false pretenses" and "false representations" are synonymous. *See* 35 C.J.S. False Pretenses § 1 (1960); *see also Weigand v. Furniss*, 85 Idaho 189, 192, 377 P.2d 371, 374, (1962). The only distinction in these theories is that fraud based on false representations involves spoken or written misrepresentations, whereas false pretenses focuses on conduct intended to give

---

**2.** The Defendants have not raised jurisdictional objections to this Court's adjudication of Plaintiff's non-core related state law fraud claims. The parties have consented to this Court disposing of these claims, and to the entry of a final judgment. *See* 28 U.S.C. § 157(c)(2).

rise to a false impression. Both involve intentional, purposeful actions designed to deceive. As such, the elements set forth for proof of fraud in *McCoy* are the same elements applicable here.

■ Based on these elements, are there genuine issues of material fact as to Plaintiff's claims against Defendants Vernon Permann or Lorita Swanson? As to the claims against Vernon Permann it appears the answer is yes.

There is a disputed question of fact as to whether Vernon Permann authorized the pledging of assets in the Otto Permann Trust to secure the loan for John Permann. There is also a question of fact concerning Vernon Permann's authority to pledge assets in the Trust. While Defendants argue otherwise, the relevant issue is not whether Vernon Permann had the legal authority to make the pledge,[3] but whether he and the Plaintiff believed he had such authority at the time of the transaction. If he sincerely believed he had authority to pledge Trust property to Plaintiff (assuming he in fact agreed to do so), fraudulent intent may be absent. If, on the other hand, he should have reasonably known he lacked such authority, a representation to the contrary could be fraudulent.

Defendant also argues that even if the Court finds that Vernon Permann agreed to pledge trust funds to secure John's loan, it was not reasonable for Plaintiff to rely on these oral representations because such a pledge would be unenforceable pursuant to the trust instrument or statute of frauds. Plaintiff contends that it assumed the documents executed by John Permann, together with its possession of the deposited funds and Vernon's oral agreement, would have been sufficient to grant it an enforceable right in the deposits.

Even assuming an oral pledge agreement would be unenforceable under the applicable statute of frauds, or the trust documents whether Plaintiff may have reasonably believed the oral agreement would be enforceable is itself a material question of fact.

**3.** Defendants point out that the trust instruments seem to prohibit a pledge of the trust assets for

Therefore, summary judgment cannot be granted to Defendant Vernon Permann on this record.

■ As to Defendant Lorita Swanson, however, Plaintiff has not shown on this record it could, if the matter proceeds to trial, prove up its claim. Plaintiff asserts its claim is based on a series of transactions covering several years, and that Lorita Swanson was involved to different degrees in several of those dealings. Still, however, Plaintiff must show some sort of false representation or conduct intended to deceive by Lorita Swanson to support its claim.

Unlike the situation with Vernon Permann, Plaintiff has failed to demonstrate any nexus between the prior actions or statements made by Lorita Swanson and the loan obtained by John Permann. The record shows that Ms. Swanson did not have any contact with Plaintiff's agents regarding the John Permann transaction. Absent such proof, there is no false representation or fraudulent conduct to support a finding of common law fraud.

Plaintiff argues that Lorita Swanson may be subjected to imputed liability for Vernon Permann's fraud based solely on her status as a co-trustee of the Trust. The Supreme Court of Idaho has relied on the Restatement (Second) of Trusts in summarizing the liability of a co-trustee as follows:

"§ 224. LIABILITY FOR BREACH OF TRUST OF CO–TRUSTEE

1. Except as stated in Subsection (2), a trustee is not liable to the beneficiary for a breach of trust committed by a co-trustee.

2. A trustee is liable to the beneficiary, if he

(a) participates in a breach of trust committed by his co-trustee; or

(b) improperly delegates the administration of the trust to his co-trustee; or

(c) approves or acquiesces in or conceals a breach of trust committed by this co-trustee; or

the personal benefit of any of the Defendants.

(d) by his failure to exercise reasonable care in the administration of the trust has enabled his co-trustee to commit a breach of trust; or

(e) neglects to take proper steps to compel his co-trustee to redress a breach of trust."

*Brixey v. Hoffman,* 101 Idaho 215, 217–18, 611 P.2d 1000, 1002 (1979), *citing* Restatement (Second) of Trusts, § 224 (1957). This record, even when viewed in a light most favorable to Plaintiff, does not support a finding that Ms. Swanson's conduct would give rise to liability as a co-trustee pursuant to these standards. In addition, it should be noted that the Restatement discusses liability of a co-trustee to the beneficiary of the trust, not to third parties dealing with the co-trustee.

Because Plaintiff cannot provide the Court with a supportable theory of recovery against her, summary judgment is appropriate in favor of Defendant Lorita Swanson and the claim against her shall be dismissed with prejudice.

*Plaintiff's Action against the Otto Permann Trust.*

The Otto Permann Trust is also named as a party-defendant in this adversary proceeding. However, Plaintiff's Complaint makes no specific allegations as to why the Otto Permann Trust is liable to Plaintiff on the debt separate from any liability of the co-trustees. The Supreme Court has stated that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the ... court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 271 (1986). Plaintiff has not argued that the Trust assets have been obligated by Vernon Permann's alleged agreement. In fact, such an argument would be inconsistent with Plaintiff's position that Vernon Permann's representation to that effect was fraudulent. Plaintiff has failed to show how the Otto Permann Trust could be held liable for the debt and summary judgment as to the Trust is appropriate.

*Conclusion.*

A separate order will be entered. Defendants' Motion for Summary Judgment will be denied as to Plaintiff's claims against Defendant John Permann pursuant to the Section 523(a)(2)(A) claim and as to the fraud claims against Defendant Vernon Permann. The motion will be granted as to Plaintiff's claims against Defendant John Permann pursuant to Section 523(a)(6) and the claims against Defendants Lorita Swanson and the Otto Permann Trust.